IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
Eastern Division

| | |
|---|---|
| **JEFFREY TABORN** <br> 63739 Rowland Road <br> Hamden, Ohio 45634 <br><br> Plaintiff, <br><br> vs. <br><br> **CITY OF CHILLICOTHE** <br> 35 S Paint Street <br> Chillicothe, OH 45601 <br><br> and <br><br> **LUKE FEENEY, Mayor** <br> 35 S. Paint Street <br> Chillicothe, OH 45601 <br><br> and <br><br> **DAVID FISHEL, City Engineer** <br> 35 S. Paint Street <br> Chillicothe, OH 45601 <br><br> and <br><br> **JEFFREY CARMEN, Safety Director** <br> 35 S. Paint Street <br> Chillicothe, OH 45601 <br><br> Defendants. | **COMPLAINT** <br><br> Case No. <br><br> Judge <br><br> **JURY DEMAND ENDORSED HEREON** |

Now comes Plaintiff Jeffrey Taborn, and for his Complaint against Defendants, states as follows:

## PARTIES

1. Plaintiff Jeffrey Taborn [hereinafter Plaintiff] is an individual male residing in Vinton County, Ohio.

1

2. Defendant City of Chillicothe is a government entity in Ross County, Ohio; Defendants Luke Feeney, David Fishel and Jeff Carmen are management employees of the City of Chillicothe with supervisory authority over Plaintiff.

## JURISDICTION AND VENUE

3. Plaintiff's claims arise, in part, under 42 U.S.C. 1983. There is federal question jurisdiction pursuant to 28 U.S.C 1331. This court has pendant jurisdiction over plaintiff's state claims.

4. The events giving rise to this claim took place in and around Chillicothe, Ohio; Defendants are located in Chillicothe, Ohio, thus venue is proper in the United States District Court for the Southern District of Ohio.

## FACTS COMMON TO ALL CLAIMS

5. Plaintiff became employed by Defendant City of Chillicothe on or around September 2001 as an electrical inspector; Plaintiff became the residential building official in the Engineering and Building Department [hereinafter the Department] in 2017

6. In August 2020, The Trotter Family contacted the Engineering and Building Department about constructing a building on a tract of land they owned in a residentially-zoned area.

7. The Trotters proposed to construct the building in a R-2 zoning area (single family residential district); their proposed use for the described structure was not a permitted use in this particular zoning area.

8. More specifically, the Trotters proposed to construct a building for possible commercial use in a residentially-zoned area.

2

9. The Department sent the Trotters required applications several times; they did not submit the required paperwork or receive the required permits before they started to build.

10. In December 2020 the Trotters started construction on the commercial building without proper permits in place.

11. Later that same month, Plaintiff posted a "stop work order" at the construction site

12. In January 2021, the Trotters completed the building and access to the building without curb-cut approval and without zoning variances or building permits.

13. In January 2021, former Chillicothe law director, Ed Bunstine, a relative to Mrs. Trotter and also the attorney representing the Trotter family, contacted the Department stating that something "had to be done" about the Department's failure to approve the Trotters' project for occupancy.

14. Plaintiff then provided Mr. Bunstine with information relevant to the Trotters' failure to complete the required paperwork and obtain the necessary approvals and permits for the project.

15. In February 2021, city Engineer Dean Carrol called Plaintiff into a meeting and informed him that the mayor was taking over the Trotter case; Plaintiff informed Defendant Fishel verbally that this was not the proper permitting process; Defendant Fishel acknowledged that it was not the proper process but said, in response, "He's the mayor."

16. In April 2021, Mr. Carrol informed Plaintiff that the mayor, Defendant Feeney, was giving the Trotter case back to him and advised he could contact the law director, Anna Villareal, to enforce the issues.

17. From April 2021 through the end of his employment with the City, Plaintiff informed Defendants repeatedly in writing, in emails and verbally, that the Trotter property presented numerous building and zoning issues that affected public safety and that the proposed project was not properly permitted or zoned in accordance with laws designed to promote public safety and welfare, including the City of Chillicothe Revised Ordinances, part 11, planning and zoning and part 13, building; Plaintiff reasonably believed that the Trotter project and its lack of proper permits and variances caused a threat of harm to public safety.

18. The Trotters subsequently applied for a zoning permit; the city denied the permit in August of 2021.

19. The Trotters had twenty days to appeal the decision; they appealed and then withdrew the appeal.

20. The law director's office did not prosecute the Trotters or take any legal action to prosecute their violations of the zoning and building codes.

21. On April 25, 2022, Defendant Fishel requested a status update on the Trotter property building permit applications.

22. Having already been chastised for his handling of this file, and having had the file taken away from him, Plaintiff responded by advising Defendant Fishel in writing that there were ongoing zoning and building code violations that affected public health

4

and safety and that he would need to exercise his right to have a union representative present if the discussion could in any way lead to him being disciplined or terminated.

23. On May 2, 2022, the City, by and through Defendant Fishel, issued a written reprimand in direct response to Plaintiff's email reiterating the numerous zoning and building code violations and exercising his union rights; the written reprimand was allegedly, for (1) failure to observe employer rules, regulations policies and procedures by failing to include a signature line on all of his email correspondence and (2) failure to obey a reasonable order of a supervisor; Plaintiff responded by refuting each of the allegations; Defendant Fishel said he was, "Issuing the write-up anyway because he (Plaintiff) was causing too much work for him."

24. In August 2022, Defendants launched an administrative investigation against Plaintiff for emailing the law director and asking for a status on the Trotter case.

25. In or around August 2022, Defendant Fishel told Plaintiff to give him the application and paperwork for the Trotters' building permit application. There was nothing to give him. Plaintiff verified that there was nothing to give him because there was no properly submitted application.

26. Defendants, by and through Defendant Fishel, launched yet another disciplinary action against Plaintiff in response and placed Plaintiff on paid administrative leave on September 1, 2022, pending the completion of the investigation.

27. Defendants demanded that Plaintiff seek permission to attend a board of zoning appeals meeting as a private citizen while he was on administrative leave.

28. Plaintiff attended the zoning board meeting as a private citizen and brought emails for the board members demonstrating that the City and certain individual

5

Defendants had violated the Ohio Revised Code in their handling of the Trotter case, to wit, Defendant Fishel filled out a zoning application for the Trotters, sent it to the Trotters and instructed them to fill it out the way he did it and sign it, then submit back to him. Defendant Fishel signed it and approved it, bypassing all the required legal steps; according to the law, the zoning administrator accepts zoning applications, not the mayor or engineer; then the zoning administrator reviews the application to ensure that the proper information has been submitted; the zoning inspector then approves or denies or asks for additional information. The application filled out by Defendant Fishel was not even capable of being reviewed because it did not have the required information, including a site plan, location of buildings, and setbacks.  Defendant Fishel filled it out and approved it without any legal authority to do so, thereby approving zoning as well as, apparently, the building itself (though no building permit had ever been issued).

29. The very same day Defendant Carmen approached Plaintiff and asked, "Where did you get those emails?"

30. The city HR director called the next day and ordered Plaintiff to bring in the emails and paperwork he had presented at the board meeting; Plaintiff took the materials in; that same day the City charged Plaintiff with insubordination and launched yet another administrative investigation.

31. Defendant Carmen told Plaintiff's timekeeper to put him down for two (2) hours overtime so that it would appear that Plaintiff was on city time at the meeting.

32. Defendant Carmen further alleged falsely that Plaintiff refused to give him the emails and paperwork at the zoning meeting, thereby giving rise to a claim against Plaintiff for insubordination.

33. Defendants fired Plaintiff, by and through Defendant Feeney, on December 1, 2022, allegedly for insubordination.

## COUNT ONE
### 42 U.S.C. 1983 -– Violation of First Amendment and Fourteenth Amendment as Against All Defendants

34. Plaintiff is a public sector employee entitled to the freedoms and protections afforded to him by the First and Fourteenth Amendments of the United States Constitution.

35. Defendants are public employers acting under color of state law.

36. Plaintiff engaged, as a private citizen, in a constitutionally-protected activity of great public concern, to wit, he attended the zoning appeal meeting as described hereinabove and spoke out as a private citizen on various violations committed by the city and its managers.

37. In response to Plaintiff's exercise of his first amendment rights, and the incorporation of those rights as to state and local governments, defendants fired Plaintiff, thereby violating his rights under color of state law.

38. Defendants' termination of Plaintiff's employment chills the exercise of employees' constitutionally-protected rights.

39. Defendants' termination of Plaintiff's employment was motivated by Plaintiff's exercise of his constitutional right to speak publicly on matters of great public concern.

40. In this instance, Defendants' interests as an employer did not outweigh Plaintiff's interest in exercising his constitutional freedoms.

41. Defendants are liable for damages.

## COUNT TWO
### Wrongful Termination – Whistleblower Retaliation - Ohio Revised Code 4113.52 as against Defendant City of Chillicothe

42. Plaintiff re-alleges the prior paragraphs as if fully set forth herein.

43. Plaintiff became aware in his role as inspector of multiple violations to the City's zoning and building code ordinances, including chapters 11 and 13, designed to protect public health and safety, including the fact that Defendants completely by-passed the application process for the building permits and zoning variances on the Trotter project and approved applications with none of the required information in violation of specific city code sections, to wit, chapter 1111, requiring zoning inspector approval, among others.

44. Plaintiff notified Defendant orally and in writing repeatedly, as described hereinabove, regarding Defendants' complete failure to abide by building and zoning code procedures; Plaintiff last raised the issue at the board of zoning appeals meeting in September 2022; Plaintiff reasonably believed that the lack of proper permits and variances on the Trotter project and the City's failure to follow approval procedure presented a concern for public safety.

45. Defendants took no action to remedy the serious breaches of procedure and instead retaliated against Plaintiff by subjecting him to multiple investigations and forced leaves of absence and eventually terminating his employment.

46. The multiple investigations and disciplinary actions against Plaintiff and eventually his termination in this instance, were motivated solely by the fact that Plaintiff reported over and over again that the city and its employees were violating laws and procedures with respect to their handling of the Trotter case.

47. Defendant lacked an overriding legitimate business interest in terminating and disciplining Plaintiff.

48. Defendants conduct demonstrated actual malice, evil motive or intent, hatred or a reckless or callous indifference to Plaintiff's rights.

49. Defendants conduct has violated the anti-retaliation provisions set forth in Ohio Revised Code 4113.52; as such Defendant is liable to Plaintiff for damages.

## **COUNT THREE**
### **Wrongful Discharge in Violation of Public Policy as to All Defendants, Individual and City of Chillicothe**

50. Plaintiff re-alleges the prior paragraphs as if fully set forth herein.

51. The state of Ohio and the City of Chillicothe have enunciated clear public policies against retaliatory discharge and in favor of public safety as it relates to the regulation of building procedures and zoning enforcement; to wit, local ordinances and state statutes, including R.C. 4113.52, which prohibits punitive and retaliatory conduct against those who report violations of the law giving rise to safety concerns; state building codes, including the Ohio Building Code, incorporated into the Chillicothe Revised Ordinances at chapter 1304; and local building codes including the City of Chillicothe revised ordinances and the laws contained therein, specifically chapters 11 and 13, among others, pertaining to building and zoning, including chapter 1111, requiring that the zoning inspector shall enforce the zoning provisions contained in the code.

52. Plaintiff raised concerns repeatedly, verbally and in writing as described hereinabove, with respect to Defendants' failure to abide by policies and procedures designed to protect the public safety relating to building procedures and enforcement of zoning laws.

9

53. Defendants terminated Plaintiff because he raised concerns with respect to Defendants' failure to follow ordinances and laws put in place to protect public safety.

54. Defendant's discharged Plaintiff in contravention of public policy as expressed in R.C. 4113.52 and state and local ordinances pertaining to building and zoning.

55. As a result, Plaintiff has been damaged and Defendants are liable.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory and punitive damages in a sum in excess of Twenty-Five Thousand Dollars ($25,000.00) in order to be fully and fairly compensated for his damages and injuries caused by Defendants' conduct, for costs and attorneys' fees associated with this action, for liquidated damages, for prejudgment and post-judgment interest according to law, for appropriate injunctive relief, up to and including reinstatement with full back pay, and for such other relief as this Court deems equitable and just.

Dated: February 8, 2023

/s/ Jessica L. Olsheski  
Jessica L. Olsheski, Esq. (0078063)  
Olsheski Law Co., LPA  
600 East Rich Street  
Columbus, Ohio  43215  
Telephone: (614) 252-5500  
Facsimile: (614) 252-5058  
Email: jessica.olsheski@justice-law.net  
Attorney for Plaintiff

### JURY DEMAND

Plaintiff hereby demands that all causes of action be tried to a jury.

/s/ Jessica L. Olsheski  
Jessica L. Olsheski, Esq. (0078063)  
Attorney for Plaintiff